IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2007

## STATE OF TENNESSEE v. SAVALAS O. McNEAL

**Appeal from the Circuit Court for Madison County**
**No. 03-696     Donald H. Allen, Judge**

---

**No. W2005-01150-CCA-R3-CD  - Filed May 24, 2007**

---

The defendant, Savalas O. McNeal, was convicted by a Madison County jury of possession of cocaine with the intent to sell and deliver and received a ten-year sentence to the Department of Correction as a Range II, multiple offender.  On appeal, the defendant contends that the evidence was insufficient to support his conviction.  We conclude that the evidence was sufficient, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Charles F. Fleet, Bolivar, Tennessee, for the appellant, Savalas O. McNeal.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arose from a narcotics investigation that resulted in the defendant's arrest and indictment for possession of cocaine with the intent to sell and possession with the intent to deliver, in violation of Tennessee Code Annotated section 39-17-417.  At the defendant's trial, Sergeant Matthew Hardaway, of the Jackson Metro Narcotics Unit, testified that on August 15, 2003, he and two other law enforcement officers were patrolling Hurt Street in Jackson in a rented unmarked van in an "attempt to arrest drug dealers."  He said that at around 2:00 a.m., their vehicle was flagged down by a woman, whom he later identified as Jeanine Gregory.  The officers told Ms. Gregory that they were looking for a "fifty," which Sergeant Hardaway explained was a slang term for fifty dollars worth of crack cocaine.  Ms. Gregory told the officers "that she knew a guy down the street that sold dope" and instructed them to return in fifteen minutes.  Sergeant Hardaway said that they left Ms.

Gregory and returned twenty to thirty minutes later and that Ms. Gregory directed them to a house at 150 Hurt Street. He said that Ms. Gregory knocked on a window of the house and that a woman later identified as Anitra Bates emerged from the front door. Sergeant Hardaway, upon Ms. Gregory's direction, approached Ms. Bates on the front porch, and Ms. Bates showed him a rock of crack cocaine that she was holding in her hand. After Ms. Bates showed Sergeant Hardaway the drugs and declared, "That's a fifty," Sergeant Hardaway identified himself as the police and detained Ms. Bates. Sergeant Hardaway said he asked Ms. Bates if anyone else was inside the residence and entered it. She told him no one else was inside but, according to Sergeant Hardaway, gave permission for him to search the residence for other people. Sergeant Hardaway said the defendant was found lying in bed with an infant in the one-bedroom residence. Officers obtained Ms. Bates' signature on a Consent to Search form. Ms. Bates said she was the leaseholder of the property, and a search of the apartment was conducted. Sergeant Hardaway said an investigator arrived with a narcotics dog, who alerted to a dresser drawer that was less than eight feet away from the bed on which the defendant was lying. Sergeant Hardaway said no contraband was found in the drawer but $922 in cash was found. He said there was no contraband found anywhere else in the residence.

Sergeant Hardaway testified that although Ms. Bates said she was the leaseholder of the apartment, she said the defendant, her boyfriend, also lived there. He admitted that Ms. Gregory did not identify the "guy" she said could provide them with cocaine. He said that it was actually Ms. Bates who handled the drug transaction and that the only drugs found in or around the residence was the crack cocaine rock in Ms. Bates' possession. He said it appeared that the defendant was asleep when they found him in bed with the infant, who Sergeant Hardaway estimated was two or three months old and who was later identified as the defendant's and Ms. Bates' child. He read into the record a warrant in which he had written that Ms. Bates voluntarily stated that the crack and money belonged to her. He said that the money was found a few feet from where the defendant was found but that the attempted drug sale actually took place in the doorway of the home, not inside it. He said that although the narcotics dog, which was trained to detect drug smells, alerted to the money in the drawer, no tests were done to detect narcotics on the money.

Brian Eaton testified that he was formerly a special agent forensic scientist with the Tennessee Bureau of Investigation Crime Laboratory. He said he analyzed an evidence sample obtained in the defendant's case and concluded that it was .4 gram of cocaine.

Jeanine Gregory testified that when she came into contact with the narcotics agents on the night of the defendant's arrest, she did not know they were undercover police. She said that the officers wanted to buy crack cocaine and that she told them that she knew a person who could provide them with some but that she had to first make sure the person was home. She instructed them to leave and return after fifteen minutes, and when they did, she took them to the house where they could buy crack. She said she asked the officers to come inside the house because "the lady" had an infant child and could not come outside to meet them. She said that when the officers were on the porch, she realized they were police.

Ms. Gregory testified that the person from whom she expected to buy drugs that night was the defendant and that she was surprised to see Anitra Bates making the sale. She acknowledged that she did not see the defendant with any drugs or money on the night of the defendant's arrest and that it was Ms. Bates who delivered the drugs to the undercover agents. She said she did not see the defendant that night until she entered the residence after Ms. Bates was arrested.

Anitra Bates testified that she was the former girlfriend of the defendant and is the mother of his child. She said that on August 15, 2003, she and the defendant had been living together at 150 Hurt Street in Jackson for one and one-half months. She said that on that date, Ms. Gregory knocked on the window that was near where her three-month old baby was sleeping and wanted to get a "fifty piece of crack" from Zeus, which Ms. Bates said was the defendant's street name. She said she was awake and told Ms. Gregory to "stop beating on the window." She said the defendant heard Ms. Gregory's "hollering" and told Ms. Bates where the crack was and to give it to Ms. Gregory. She said she found the crack where the defendant told her it was, under a banister in the bedroom. She said she was scared and followed the defendant's orders because the defendant was abusive. She said that when she got to the door, she saw the officers walking down the sidewalk toward her and knew they were police. She said she did not run away but told the police that the drugs were hers so they would take her to jail. She said that when she got to jail, she told them "what really happened."

Ms. Bates testified that she thought both she and the defendant signed the lease on their home but that she solely paid rent. She acknowledged that she was tried and convicted of possession of cocaine with the intent to sell, stemming from the same incident for which the defendant was on trial, but she said she had not yet been sentenced. She denied that she was testifying against the defendant in hope of obtaining a lenient sentence. She said the District Attorney's office did not promise her anything in return for her testimony. She admitted that she was imprisoned in 2001 and was charged with aggravated perjury in 1998. She said she pleaded guilty to aggravated perjury and received a sentence of three years. She admitted to lying under oath previously but said that she was not lying under oath at the defendant's trial and that she had no reason to lie at the defendant's trial.

Ms. Bates admitted that she handed crack cocaine to a police officer, even after realizing he was a police officer. She said she actually handed him two rocks of crack cocaine. She said the defendant was not asleep when the officers came to meet her because he could not have slept through Ms. Gregory's beating on the window. She acknowledged that she initially told Sergeant Hardaway that the drugs and money belonged to her but said that when she got to jail, she told him the "whole story" about the defendant beating her that night. She said she wanted to be taken to jail so she could get away from the defendant.

The state recalled Sergeant Hardaway, who testified that when he first saw Ms. Bates on August 15, 2003, she appeared to have tissue in her nostril and a swollen lip. He said she told him at the scene of the arrest that she wanted to talk to him later but did not want the defendant to find out what she was going to tell him. Sergeant Hardaway said the defendant was not charged with domestic assault, extortion, or intimidation.

Officer Mark Smith of the Jackson Police Department testified that he was a canine handler assigned to the Metro Narcotics Unit. He said his dog was certified to detect marijuana, cocaine, hash, crack cocaine, heroin, and methamphetamine. He said that when the dog detected one of these drugs, she bit and scratched and attempted to retrieve the source of the odor. He said the dog was not certified to detect money. He said that on August 15, 2003, he was called to search the residence at 150 Hurt Street with a canine. He said that he searched the entire home and that the dog only had one alert, which was on a dresser drawer in the bedroom. He said officers took out the drawer and discovered money inside it but no drugs. He believed that the dog detected the residual odor of narcotics in the drawer. He said he and the dog did not find narcotics anywhere in the house. He was not aware of any physical tests that were performed to detect the presence of narcotics on the money recovered from the drawer.

A jury found the defendant guilty of both possession of cocaine with the intent to sell and possession with the intent to deliver. The trial court merged the counts into a single Class C felony conviction and sentenced the defendant to ten years at thirty-five percent as a Range II, multiple offender. On appeal, the defendant contends that the evidence was not sufficient to convict him. The state argues that the appeal should be dismissed because it was untimely and that the evidence was sufficient.

As for the state's timeliness contentions, the record reflects that the judgment was filed on March 10, 2005. The defendant filed his "Motion for Judgment of Acquittal or in the Alternative New Trial" on April 20, 2005. The trial court denied this motion in an order dated April 26, 2005, and the defendant's notice of appeal to this court followed on May 18, 2005. Tennessee Rule of Appellate Procedure 4 provides that a notice of appeal is to be filed thirty days after entry of judgment or, if a certain post-trial motion is filed, thirty days after entry of the order denying the motion. The Tennessee Rules of Criminal Procedure mandate that a motion for judgment of acquittal or for a new trial is to be filed within thirty days of the date of entry of the order of sentence. Tenn. R. Crim. P. 29(e), 33(b). Our supreme court has held that the thirty-day limit for filing a motion for a new trial is mandatory and that a trial court does not have jurisdiction to hear and determine the merits of a motion for new trial if it is filed outside the thirty-day period. State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). Thus, when a defendant has not timely filed a motion for a new trial, he has not preserved those issues for appeal which are required to be raised in a motion for a new trial. Id. In the present case, the defendant filed his motion for acquittal or a new trial over thirty days after the entry of judgment but filed his notice of appeal within thirty days of the denial of the motion. Although the defendant's motion for a new trial was not timely filed, he raises on appeal only the issue of the sufficiency of the evidence, which is not required to be preserved in a motion for new trial. See State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). Still, we agree with the state that because the defendant's motion was filed late, he did not successfully toll the filing of his notice of appeal. However, the timely filing of a notice of appeal is not jurisdictional, and we elect in this case to waive the requirement of timely filing in the interest of justice. See T.R.A.P. 4(a).

Regarding the defendant's contention that the evidence is not sufficient to support his conviction, our standard of review on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The defendant was convicted of violating the provision of our criminal code which makes it an offense for a person knowingly to "[p]ossess a controlled substance with intent to . . . deliver or sell such controlled substance." T.C.A. § 39-17-417(a)(4). We note that "possession" can be actual or constructive, and constructive possession can be established by proof that "the person has 'the power and intention at a given time to exercise dominion and control over ... [the drugs] either directly or through others.' In other words, 'constructive possession is the ability to reduce an object to actual possession.'" State v. Ross, 49 S.W.3d 833, 845-46 (Tenn. 2001) (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996)). Furthermore, "although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves[.]" Id. at 846 (citations omitted).

In the light most favorable to the state, the evidence shows that Ms. Gregory told undercover narcotics agents that she knew a man who could sell them a "fifty" of crack cocaine and that Ms. Gregory went to the house where the defendant and Ms. Bates lived and requested the defendant to sell crack cocaine to the officers. Ms. Bates said that, upon Ms. Gregory's request, the defendant told her where drugs could be found and instructed her to sell them to Ms. Gregory. Ms. Bates arrived at the door of the house with what was later determined to be crack cocaine. A narcotics canine detected narcotics residue in a drawer near where the defendant was lying and where $922 in cash was found.

The defendant argues that the only evidence linking him to the crime was the testimony of Ms. Bates, a convicted perjurer. However, the jury apparently chose to accredit the testimony of Ms. Bates, despite evidence of her prior conviction for perjury, and we do not second-guess credibility determinations by the jury. Furthermore, Ms. Bates' testimony was corroborated by other evidence, including the testimony of Ms. Gregory that she expected the defendant to sell the crack and was surprised to see Ms. Bates come to the door, the testimony of Sergeant Hardaway that Ms. Bates had physical injuries and appeared to be worried about the defendant finding out that she was talking to officers, and the recovery of a large amount of cash and detection of narcotics in the dresser drawer only a few feet from the defendant. Ms. Bates' testimony combined with this circumstantial evidence is sufficient to establish that the defendant had constructive possession of the cocaine and

intended to sell it.  We conclude the evidence is sufficient to establish the elements of the offense for which the defendant was convicted.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____

JOSEPH M. TIPTON, PRESIDING JUDGE