**STATE of Tennessee, Appellee,**

v.

**LaDonna H. DAVIS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 11, 1987.

Permission to Appeal Denied by Supreme Court April 4, 1988.

Robert H. Crawford, Jr., Robert H. Crawford, Sr., Crawford, Hayes & Crawford, Chattanooga, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, Janice Bossing, Asst. State Atty. Gen., Nashville, Frank Groves, Thomas Evans, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

OPINION

BYERS, Judge.

The defendant, LaDonna Davis, was convicted, by a jury, of the first degree murder of her husband. She received a life sentence.

On appeal, the defendant says the indictment should have been dismissed as vague and insufficient, the state's response to her motion for a bill of particulars was inadequate, the evidence is insufficient to sup-

port the verdict, and several of her statements to police officers should have been suppressed.

The judgment is affirmed.

At the outset, the state contends this appeal should be dismissed because the defendant's motion for a new trial and subsequent notice of appeal were untimely filed.

Judgment was entered on the jury verdict and the sentence was imposed at the close of the trial on November 6, 1986. On December 4, 1986 the trial court entered an order allowing an additional thirty days for filing the motion for a new trial and reciting that "good and sufficient reasons" had been shown. On January 5, 1987 the defendant filed her motion for a new trial. After a hearing the motion was denied on February 9, 1987. Defendant filed a notice of appeal from the final judgment on March 10, 1987.

■ Under prior decisions of this Court and the explicit language of the Rules of Criminal Procedure the trial court was without authority to enlarge the time for filing the new trial motion. Rule 33(b), Tenn.R.Crim.P., requires that motions for a new trial be made in writing within thirty days of the date the sentencing order is entered. Rule 45(b), Tenn.R.Crim.P., which provides generally for the enlargement of time requirements under the Rules, expressly excepts new trial motions: "[B]ut the court may not extend the time for taking any action under Rules 29, 33 and 34, except to the extent and under the conditions stated in them." Rule 33 does not state any such "extent" or "condition." The defendant's good faith efforts within the thirty-day period cannot alter the mandatory rule of procedure, and the state cannot waive it. *State v. Givhan*, 616 S.W. 2d 612 (Tenn.Cr.App.1980).

Because the untimely motion was a nullity, it did not toll or defer the thirty-day period for filing the notice of appeal, which expired on December 6, 1986. *See* T.R.A.P. 4(c). On this basis the state urges that the appeal be dismissed.

■ The timely filing of a notice of appeal is no longer a prerequisite to jurisdiction in this Court, and we elect in this case to waive the requirement in the interest of justice. *See* T.R.A.P. 4(a). While we cannot review those issues upon which a new trial was sought, we may review those issues that would result in a dismissal. T.R.A.P. 3(e); *State v. Williams*, 675 S.W. 2d 499 (Tenn.Cr.App.1984); *State v. Givhan*, 616 S.W.2d 612 (Tenn.Cr.App. 1980). Therefore, the issues concerning the admissibility of the defendant's statement and the adequacy of the bill of particulars are waived; the sufficiency of the indictment and the sufficiency of the evidence are properly before this Court.

■ The grand jurors of Hamilton County returned a true bill in this case, charging

That LaDonna H. Davis and Anthony L. Rogers heretofore on the 15th day of March, 1986, in the County aforesaid, did unlawfully, feloniously, deliberately, maliciously, premeditatedly and of malice aforethought assault, kill and murder Terry L. Davis, against the peace and dignity of the State.

It is well settled that an indictment is sufficient if it (1) gives notice of the offense with which the defendant is charged; (2) enables the court to enter a proper judgment, and (3) describes the offense so as to allow the accused to raise a plea of former jeopardy. The defendant says this presentment did not "apprise her of the facts necessary to formulate the basis of her defense." The allegations track the language of the applicable statutes, T.C.A. § 39-2-202, -201, and clearly charge murder in the first degree. The victim is named, as well as the date of the offense. This is a competent presentment.

If further details are required on the particular case, they may be sought by requesting a bill of particulars or obtained through the discovery procedure. In this case the defendant wanted to know the instrumentality of the crime and the precise manner of her alleged participation. None of this is essential to a charge of first degree murder.

■ We review the evidence to determine if a rational juror could find beyond a

reasonable doubt the defendant committed all the elements of the offense, keeping in mind that the credibility of the witnesses, the weight of any items of evidence, and conflicts in the proof are matters to be resolved exclusively by the jury.

The victim in this case, husband of the defendant, was discovered in a closet of his apartment on the evening of March 15, 1986. His body was bloody and bound with strips of cloth and wire. There were bloodstains throughout the apartment, and a tire jack with traces of blood and hair was found in the kitchen. A jar of water, with still frozen ice cubes, was found in the bedroom.

The deceased suffered six major head wounds, each potentially fatal, caused by both blunt and sharp instruments, but he did not die immediately. The various wounds were consistent with the weight and shape of the tire jack and a hatchet discovered a short distance from the dwelling.

The state's proof showed that the defendant and Anthony Rogers had previously had an intimate relationship and in recent weeks he had been hanging about the Davis apartment, over Terry Davis' objection. On one occasion they had fought, and on the night of the 14th Terry Davis called the landlord to remove Rogers from the premises. The defendant protested and declared she would get even with the person who made Rogers leave.

The Davises' neighbor had on several occasions heard the defendant threaten her husband, saying "Anthony will kill you." Another witness heard the Davises argue on March 14, and the defendant repeatedly said that she would kill Terry and get Anthony to help.

On the morning of the 15th Davis and his wife came to their neighbor's door to ask for cigarettes. A short time later, through her kitchen window, the neighbor heard Anthony Rogers say "Make one wrong

move, and I'll slit your throat." She heard Davis call out his wife's name.

The neighbor became frightened and walked to a local store to call the landlord. He arrived around noon, but no one answered from the Davis apartment. Meanwhile, the neighbor had returned briefly and found blood outside the house. The back porch had been washed and swept. The defendant came to the door and told her she and Terry would be away for the day. There were two dark spots on the defendant's blouse, but otherwise her clothing and shoes were unstained.

In addition, Terry Davis' mother testified her son and his wife did not come to her home on March 15.

Shortly after the body was found the defendant was observed on the street nearby. She told an officer she and her husband had been visiting his mother in another part of the city and he was still there.

Later that night she gave a statement to officers, admitting her presence in the apartment during the assault but denying any participation. According to her, Anthony Rogers broke into the apartment on the morning of the 15th, struck her husband repeatedly and, throughout the day, prevented her from getting aid. She claimed Rogers intended to bury the body in the basement of the residence, but they both fled when they realized the police were coming.

Rogers was arrested on the same evening and confessed to the murder. By his account, he first struck the victim with the tire jack on the back porch of the apartment, and then the two went inside to resolve a dispute about some family possessions. The argument escalated, and Terry Davis attacked him with a hatchet. According to Rogers, LaDonna Davis then helped him to subdue her husband, washed the blood from the porch, and helped to wrap the body with sheets. She did not try to get help and, in fact, went outside to tell the neighbor that she and her husband would be away visiting his mother.[1]

1. The record suggests that Anthony Rogers had pled guilty to the murder. When his statement was offered, defense counsel announced "No objection." He extensively cross-examined an investigating officer on conflicts between Rogers' statement and the physical evidence. He

The defense attempted to minimize the conflicts between the defendant's various statements and the state's proof. Through an expert witness and a family member the defense attempted to show that LaDonna Davis was a person of low intelligence, incapable of planning the murder or giving an accurate account of the events under stress. Her intelligence was measured at 52, and her husband had been named her guardian to receive Social Security benefits on her behalf.[2]

In conjunction with the defendant's statement, the state introduced evidence from lay witnesses about her ability to communicate accurately and purposefully. The landlord testified that in an unrelated incident the defendant had declared she was not afraid to lie to the police since she could always prove she was crazy. An officer who knew the defendant testified that on prior disturbance calls she had been able to cover up unfavorable facts and to effectively express her own interests.

The defendant insists that at most, the proof would support a conviction for accessory after the fact of murder. We disagree. The jury was entitled to give significant weight to the defendant's previous threats toward her husband and her expressed intention to enlist Anthony Rogers' assistance. Prior threats are sufficient to establish an intent to kill.

The jury was also entitled to consider the defendant's failure to alert her neighbor when given the opportunity, as well as her positive effort to conceal the crime from the neighbor and from the officer on the street. On this point the landlord's testimony about the defendant's proposal to lie to the police and rely on incompetence, and the officer's testimony about her ability to assert her own interests and to cover up unfavorable facts, could support a conclusion that the inconsistencies in the defendant's various statements resulted from connivance rather than confusion.

The argument that the first blow was fatal and, therefore, the defendant's subsequent actions were after the fact of murder is refuted by the record. It is undisputed that the victim lived for some undetermined time and suffered additional injuries in the presence of the defendant. There is a strong inference that this occurred with her help, and at her behest.

We find the proof sufficient to show that the defendant, with malice and premeditation, did aid and abet the slaying of Terry Davis.

SCOTT and BIRCH, JJ., concur.

---

later announced that Rogers would be called as the third defense witness. After two witnesses had testified there was a bench conference off the record and the defense rested. As there has been no challenge to this piece of evidence and the record does not disclose what counsel had in mind, we do not elect to consider its admissibility for the first time on appeal. *Cf. State v. Ogle,* 666 S.W.2d 58 (Tenn.1984).

**2.** The expert testified an insanity defense, as defined in *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), could not be supported.