IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 28, 2005 Session

## STATE OF TENNESSEE v. LISA DURBIN HOWARD

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-03-669     Carroll L. Ross, Judge**

_____

### No. E2005-00112-CCA-R3-CD - Filed November 4, 2005

_____

A Bradley County Criminal Court jury convicted the appellant, Lisa Durbin Howard, of first degree premeditated murder, and the trial court sentenced her to life imprisonment. The appellant appeals her conviction, claiming (1) that the trial court's comments to the jury during deliberations amounted to an improper "dynamite" or Allen charge; (2) that the trial court erred by excluding a defense expert's testimony; (3) that the State impermissibly excluded the only African-American from the jury pool; (4) that juror misconduct denied her the right to a fair and impartial jury; (5) that the State failed to preserve the audiotaped recording of the preliminary hearing as required by Tennessee Rule of Criminal Procedure 5.1(a); and (6) that the trial court erred by not conducting a proper jury poll. We conclude that the appellant has waived these issues because she failed to file a timely motion for new trial. Moreover, we discern no plain error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH, and ALAN E. GLENN, JJ., joined.

Robin Rubin Flores, Chattanooga, Tennessee, for the appellant, Lisa Durbin Howard.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Jerry N. Estes, District Attorney General; and John H. Bledsoe, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

This case arose from the appellant's shooting her husband, Brian Howard. The testimony at trial revealed that on the night of February 15, 2002, Joey Stevenson, the appellant's former boyfriend, called 911 to report a shooting at 701 Lowery Street. When the police arrived, two women were standing outside a mobile home and were hysterical. One of the women, who was the

appellant, told an officer, "I shot him." While a police officer talked to the women, a second officer went inside the mobile home and discovered the victim lying on the floor in the master bedroom. He had been shot twice and was dead. The police found a Beretta pistol and a shell casing on the bed and a shell casing underneath the bed. The police also found a holstered nine millimeter pistol laying on a dresser near the foot of the bed. The police transported the appellant to the police department, where she gave a statement in which she admitted shooting the victim.

Several witnesses testified at trial about the victim's being jealous of the appellant's ongoing friendship with Joey Stevenson. Witnesses for the defense also testified about the victim's being violent toward the appellant, moving out of their home repeatedly, and taking Prozac for depression. Joey Stevenson testified that about 7:30 p.m. on the night of the shooting, he was at work and the appellant telephoned him from the hospital, where she was visiting her father. The appellant told Stevenson that the victim was not showing her any compassion. Stevenson told the appellant that he was busy and would have to talk to her later. About 9:30 p.m., the appellant telephoned Stevenson again and told him that she had shot the victim. The appellant was frantic, and Stevenson hung up the telephone and called 911.

The appellant testified that on the day of the shooting, she had been visiting her father, who was very sick and in the hospital. That evening, the victim came to the hospital and began harassing the appellant. The appellant went outside and sat in her car, but the victim followed her into the parking lot and pounded on her car window. The appellant drove home, and the victim arrived sometime later. They began "fussing," and the appellant suggested that the victim leave. The appellant walked to her parents' house nearby and retrieved the victim's nine millimeter Beretta that she had left there. When she returned to the mobile home, the victim was in the bedroom and sitting near the foot of the bed. The appellant sat near the head of the bed, and the victim glared over his shoulder at the appellant and told her that "if I leave this house again, I'm not going to leave you alive." The victim started to get up, and the appellant shot him with the Beretta once in the upper back and once in the chest. The appellant claimed that the victim had been reaching for the gun on the dresser, that she shot the victim in self-defense, and that she shot him the second time because he "kept coming." The jury convicted the appellant of first degree premeditated murder, and the trial court sentenced her to life.

## II. Analysis

On appeal, the appellant claims (1) that the trial court's comments to the jury during deliberations amounted to an improper "dynamite" or Allen charge; (2) that the trial court erred by excluding a defense expert's testimony; (3) that the State impermissibly excluded the only African-American from the jury pool; (4) that juror misconduct denied her the right to a fair and impartial jury; (5) that the State failed to preserve the audiotaped recording of the preliminary hearing as required by Tennessee Rule of Criminal Procedure 5.1(a); and (6) that the trial court erred by not conducting a proper jury poll. The State claims that the appellant has waived the issues because she failed to file a timely motion for new trial. We agree with the State.

A motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). Because a trial court does not have jurisdiction to hear and determine the merits of an untimely motion for new trial, the trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . does not validate the motion." Martin, 940 S.W.2d at 569 (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)). An untimely motion for new trial "not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial." Id. Moreover, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal. Therefore, an untimely motion for new trial often will also result in an untimely notice of appeal. State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987).

In this case, the trial court entered the judgment of conviction on February 13, 2004. The appellant did not file a motion for new trial until June 18, 2004, more than thirty days after sentencing. Thus, her motion for new trial was untimely, and she has waived her claims. Moreover, we discern no plain error. See Tenn. R. Crim. P. 52(b). We note that despite an untimely motion for new trial, this court may review sufficiency of the evidence and sentencing. State v. Boxley, 76 S.W.3d 381 (Tenn. Crim. App. 2001). However, the appellant did not raise those issues in her appellate brief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.


_____
NORMA McGEE OGLE, JUDGE