IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

# STATE OF TENNESSEE v. MILICA WILSON

**Appeal from the Criminal Court for Shelby County**
**No. 01-06610, 01-06612    Carolyn Wade Blackett, Judge**

---

**No. W2006-00645-CCA-R3-CD  - Filed September 13, 2007**

---

Appellant, Milica Wilson, was indicted for one count of attempted especially aggravated robbery.[1] After a jury trial, Appellant was found guilty of facilitation of attempted especially aggravated robbery. He was found not guilty of felony murder and first degree murder. As a result, Appellant was sentenced on August 13, 2003, to serve eight years as a Range II, multiple offender in the Department of Correction. Appellant filed an untimely motion for new trial on September 25, 2003. Subsequently, Appellant filed two amended motions for new trial. The trial court conducted a hearing on the motions on February 27, 2006, at the conclusion of which the trial court denied the motion for new trial. Appellant filed an untimely notice of appeal. On appeal, Appellant contends: (1) the evidence was insufficient to support the conviction; (2) the trial court erred in admitting the testimony of co-defendant Frank Dowdy as there was no corroboration of the testimony; and (3) the trial court erred in giving a jury instruction on flight. Because Appellant filed an untimely motion for new trial, which resulted in the filing of an untimely notice of appeal, we must dismiss Appellant's appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Robert B. Gaia, Olive Branch, Mississippi, for the appellant, Milica Wilson.

Robert E. Cooper, Jr., Attorney General & Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and John Campbell, Assistant District Attorney General,  for the appellee, State of Tennessee.

---

[1]It appears from the record and the transcript of the trial that Appellant was also indicted on the additional charges of felony murder and first degree murder. These indictments do not appear in the record before this Court.

**OPINION**

*Factual Background*

On June 26, 2001, the Shelby County Grand Jury indicted Appellant for one count of attempted especially aggravated robbery. According to the record on appeal, Appellant was arraigned on charges of attempted especially aggravated robbery, murder during the perpetration of a felony and first degree murder. The record does not contain copies of the indictments for felony murder or first degree murder, though it appears from the transcript of the trial that Appellant was tried on these charges. At trial on June 24-26, 2003, the following testimony was presented.

Landon Douglass Walthall, the victim, was an employee of Globe Liquor Store in Memphis. On December 8, 2000, the victim was shot in the upper-outside of his left arm while working at the store. The bullet went through the victim's arm and into his chest where it passed between two ribs, bruised his left lung, went through his heart, cutting the ventricle and one of the coronary arteries. The bullet then went through the victim's liver and settled in the abdominal cavity. The victim died as a result of the gunshot wound.

Mario Moorehead, Appellant's cousin, was shooting dice with friends on Aubra Street, close to the Globe Liquor Store on the evening of December 8, 2000. According to Mr. Moorehead, Appellant and a man he knew as "Frank" came by, bought a bag of marijuana, and left. About fifteen or twenty minutes later, Mr. Moorehead heard a gunshot. When he looked to see what was happening, he saw who he thought were Appellant and Frank running down the street as though someone were "trying to chase them." According to Mr. Moorehead, the two men got into a black or blue car and left the area.

On cross-examination at trial, Mr. Moorehead expressed doubt as to whether the people he saw running down the street were actually Appellant and Frank. However, after he viewed the store surveillance tape, he stated he knew who the people were. Further, Mr. Moorehead stated that he knew that "Frank" had pleaded guilty, so he figured that "Frank" must have been involved.

Frank Dowdy testified that he was indicted for attempted especially aggravated robbery and facilitation to commit murder as a result of the incident that occurred on December 8, 2000, at the Globe Liquor Store. According to Mr. Dowdy, before the duo attempted to rob the store, they went to a nearby apartment and purchased a "sack of weed." Then, Mr. Dowdy and Appellant went to their car to "roll the weed up." The car belonged to Mr. Dowdy's brother Demarjo. Demarjo was also in the car. The men smoked the marijuana. Then, Appellant mentioned something about robbing the liquor store. Apparently, Appellant stated that he had been "watching it for awhile" and

that there "was a lot of money in there." According to Mr. Dowdy, Appellant had "stashed" a "gas bottle" and masks. Appellant also had a gun and gloves. Appellant informed Mr. Dowdy that his job was to squirt gasoline from the bottle into the area where the cashier was located and to guard the door to ensure that no one came into the store. Appellant "coach[ed]" him on his role in the robbery, "telling [him] what [his] part was going to be." Appellant and Mr. Dowdy set out to rob the store at around 6:50 p.m.

Appellant and Mr. Dowdy took the Coca-Cola bottle filled with gasoline that had a hose attached to the neck, a gun, gloves and masks with them to the back of the liquor store. The men waited for about five or ten minutes to make sure that there was not anyone inside the store. When they entered the store, Mr. Dowdy had the bottle in his right hand. The victim was sitting down behind the counter, which was enclosed by a glass partition. Mr. Dowdy stated that he "stuffed the gas hose in the slot where they slide the liquor out" and said to the clerk, "I got some gas for you here." The clerk reached for a gun, and Appellant shot him. According to Mr. Dowdy, there were two shots. After he heard the shots, Mr. Dowdy dropped the gas bottle and ran away. There was not time to go back to the door before the shots were fired. Mr. Dowdy dropped the gas bottle in the parking lot and ran. He was not sure whether Appellant or the clerk fired the shots. Mr. Dowdy and Appellant returned to the car, then drove away. Once in the car, Appellant told Mr. Dowdy that he "bucked" or killed the victim. Mr. Dowdy did not know what happened to the gun after the robbery. After leaving the liquor store, Mr. Dowdy, Appellant and Demarjo went to Appellant's grandmother's house, which was less than five minutes away. Once there, Mr. Dowdy burned the mask and gloves that he wore during the robbery. The men stayed at Appellant's grandmother's house for about thirty minutes to an hour. Once there, they smoked more marijuana and drank beer. Mr. Dowdy was arrested approximately three weeks later and admitted his involvement in the incident. Mr. Dowdy also admitted that he never actually saw Appellant's gun.

Officer Joe Stark of the Memphis Police Department responded to the call to investigate the homicide at Globe Liquors. When he arrived at the scene he found a "clip" from a .22 caliber semi-automatic handgun in the parking lot. The clip contained four live rounds of ammunition. Additionally, Officer Stark found a plastic Coca-Cola jug with a green hose coming out of the neck. Once inside the store, Officer Stark observed a small amount of flammable liquid, which he thought to be gasoline, in the money tray by the cash register. Officer Stark also located a spent shell casing in the opening where the cashier passes the liquor bottle to the customer. Three bottles appeared to have been shot, and there was a spent bullet and two bullet fragments on the floor. Officer Stark also located a bullet fragment between a refrigerator and freezer as well as another spent shell casing among some paper bags. Officer Stark secured the store's video surveillance tape. The tape showed two people coming into the store. One person placed what appeared to be a hose in the money tray and then the other person placed a gun through another opening in the cashier area and shot the victim.

Officer Sharon Kelly of the Memphis Police Department was dispatched to a Motel 6 on Brooks Road on January 12, 2001, to pickup Appellant because he was a suspect in the homicide of the victim. When she and several other officers, including Officer Shane Jordan, knocked on the

-3-

door to the room in which Appellant was supposed to be staying, no one answered the door. The officers heard noises coming from inside the room, so they waited in the parking lot for the occupant of the room to emerge. About an hour later, Appellant came to the door and stood in the door frame. It appeared that Appellant was about to exit the room, so the officers approached him and placed him under arrest. In the room, officers found a box of .380 caliber ammunition. There were eleven cartridges missing from a box of fifty.

Appellant called several alibi witnesses on his behalf. Helen Payne, Appellant's aunt, testified that on December 8, 2000, she worked until around 2:00 p.m. After work, she went to the home of her mother, Appellant's grandmother, Bertha Mull, to celebrate her birthday. Ms. Payne arrived at the house around 4:30 or 5:00 p.m. and remained there until 4:00 or 4:30 the next morning. According to Ms. Payne, Appellant arrived at the house around 5:30 or 6:00 p.m. and stayed there until after midnight.

Dorothy Mull was also at the house on December 8, 2000, to celebrate Ms. Payne's birthday. She arrived around 5:00 p.m., and Appellant was already at the house when she arrived. She claimed that Appellant stayed "practically all night," at least until after 10:00 or 11:00 p.m. On cross-examination, Ms. Mull explained that Appellant was her nephew and admitted that she never told the police that Appellant was at her mother's house at the time of the robbery.

Tracy Matthews knew Appellant through his uncle. Mr. Matthews was also present at Ms. Mull's house on the night of December 8, 2000 to celebrate Ms. Payne's birthday. According to Mr. Matthews, he arrived at 6:18 p.m. from work, and Appellant was there when he arrived. He stayed until around 8:30 p.m., and Appellant was still there when he left. Mr. Matthews did not notify police that Appellant was at the house that evening.

Kenneth Wallace, Sr., testified that he saw Appellant at around 4:00 p.m. on December 8, 2000, but that he did not know where Appellant went after their brief meeting.

Bobbie Brown, Appellant's uncle, was also at the birthday party at Ms. Mull's house. According to Mr. Brown, Appellant was already at the party when he arrived shortly before 6:00 p.m. and was still there when he left around 7:45 p.m. Mr. Brown did not see Appellant leave for any long period of time. Mr. Brown also stated that although he knew that Appellant was arrested and charged with murder, he never informed the police that Appellant was at the birthday party when the murder occurred.

In rebuttal for the State, Lieutenant Robert Shemwell of the Memphis Police Department testified that in January of 2001, he interviewed Appellant as a suspect in the murder of the victim. At that time, Appellant stated that he had gone to his grandmother's house and that he learned about the shooting from someone at the house. Appellant did not inform Lieutenant Shemwell that he was at a birthday party when the robbery occurred and did not give Lieutenant Shemwell the names of any alibi witnesses that would testify that Appellant was not at the scene of the crime.

At the conclusion of the proof, the jury found Appellant not guilty of first degree murder and murder in the perpetration of a felony. The jury also found Appellant not guilty of attempted especially aggravated robbery. The jury found Appellant guilty of the lesser-included offense of facilitation of attempted especially aggravated robbery. On August 13, 2003, the trial court sentenced Appellant as a Range II, multiple offender to serve eight years in the Department of Correction.

On September 25, 2003, Appellant filed a motion for new trial in which he challenged the sufficiency of the evidence. On February 11, 2005, through newly-appointed counsel, Appellant filed a second motion for new trial. On August 25, 2005, Appellant filed an amended motion for new trial in which he argued that the trial court erred in instructing the jury on flight; allowing counsel for the State to make improper references to Appellant's failure to testify; allowing counsel for the State to comment on the range of punishment for the crime during voir dire; denying the motion in limine to exclude the evidence found in Appellant's hotel room; ruling the evidence was sufficient to sustain the conviction; allowing counsel for the State to improperly lead a witness; and in failing to declare a mistrial when one of the jurors admitted that he knew the co-defendant. The trial court conducted a hearing on the motion for new trial on February 27, 2006. At the conclusion of the hearing, the trial court denied the motion. Appellant filed a notice of appeal on March 23, 2006.

*Analysis*

Initially, we must address the procedural history of the case herein. Appellant was sentenced on August 13, 2003. Appellant's motion for new trial was filed on September 25, 2003, forty-three days after the sentencing hearing. A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b).

Tennessee Rule of Appellate Procedure 3(e) provides in pertinent part:

An appeal as of right to the Supreme Court, Court of Appeals, or Court of Criminal Appeals shall be taken by timely filing a notice of appeal . . . . Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

"Unlike the untimely filing of the notice of appeal, this Court does not have the authority to waive the untimely filing of a motion for new trial." *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997); Tenn. R. App. P. 4(a); This provision is mandatory, and the time for filing may not be extended. *See* Tenn. R. Crim. P. 45(b); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). A motion for new trial which is untimely filed is a nullity. *See State v. Dodson*, 780 S.W.2d 778, 780

(Tenn. Crim. App. 1989). This Court has previously held that pursuant to Rule 3(e) "the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include an issue in a motion for a new trial results in waiver of all issues which, if found to be meritorious, would result in the granting of a new trial." *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) (footnote omitted).

It is apparent from the record on appeal that Appellant's motion for new trial was untimely.[2] The untimely motion for new trial was followed by an untimely amended motion for new trial almost a year and a half later. This second motion for new trial was amended again in August of 2005, and the trial court did not consider and rule on Appellant's motion for new trial until February of 2006, almost three years after Appellant was sentenced. The trial court considered and ruled on the motion for new trial despite the fact that it was untimely. Because a trial court does not have jurisdiction to hear and determine the merits of an untimely motion for new trial, the trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . does not validate the motion." *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (citing *Dodson*, 780 S.W.2d at 780 ).

Because the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal, a late filed motion for new trial will generally result in an untimely notice of appeal. *Patterson*, 966 S.W.2d at 440; *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). In the case herein, the trial court denied the untimely motion for new trial on February 27, 2006, and Appellant filed an untimely notice of appeal on March 23, 2006.

Although at least one of Appellant's issues, the sufficiency of the evidence, need not be raised in a motion for new trial in order to secure appellate review, *see State v. Boxley*, 76 S.W.3d 381 (Tenn. Crim. App. 2001), there is no automatic appeal of this issue to this Court. Either the timely filing of a notice of appeal must occur, or a waiver of the timely filing of a notice of appeal must be obtained from this Court in order to perfect an appeal. Tenn. R. App. P. 4(a).

It is clear, as noted in the State's brief, that the motion for new trial herein is untimely. We have also determined that the filing of the notice of appeal herein is also untimely. It is equally clear that, despite receipt of the State's brief pointing out that Appellant filed an untimely motion for new trial, Appellant at this late date has not sought a waiver of the timely filing requirement of the notice of appeal in the "interest of justice" pursuant to Tennessee Rule of Appellate Procedure 4(a). Given the failure of Appellant to remedy the untimeliness of the motion for new trial and/or notice of appeal, we conclude that no appeal is properly before this Court. Moreover, after a review of the record, we conclude that a waiver of the timely filing of the notice of appeal is not in the interests of justice due, in part, to the overwhelming evidence of Appellant's guilt presented at trial. Consequently, Appellant's appeal is dismissed.

---

[2]The technical record in this case contains an affidavit of trial counsel appended to the motion for new trial that references some type of post-conviction relief granted to Appellant. However, there is no judgment granting a delayed appeal nor any other document evincing a timely motion for new trial.

*Conclusion*

For the foregoing reasons, Appellant's appeal is dismissed.

_____
JERRY L. SMITH, JUDGE