IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2007

## STATE OF TENNESSEE v. MICHAEL DEWAYNE MANN

**Appeal from the Circuit Court for Dyer County**
**No. C06-137     Lee Moore, Judge**

_____

**No. W2007-00017-CCA-R3-CD  - Filed April 18, 2008**

_____

The Appellant, Michael D. Mann, appeals his misdemeanor conviction by a Dyer County jury for aggravated criminal trespass.  Mann challenges the sufficiency of the evidence underlying this conviction.  The State argues that Mann has waived his right to appeal this issue by failing to file a timely motion for new trial or notice of appeal.  We agree, but, in the interest of justice, we waive the timeliness requirement for the notice of appeal.  After review, we conclude that the evidence at trial was legally sufficient to support Mann's conviction for aggravated criminal trespass. Alternatively, the State appeals the trial court's grant of Mann's motion for judgment of acquittal as to a separate charge of simple assault.  However, there is no authority which permits the State to appeal, as of right, from a trial court's grant of a motion for judgment of acquittal when the grant is entered prior to a verdict of guilty. *See* Tenn. R. App. P. 3(c).  Accordingly, the judgment of the trial court is affirmed in all respects.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

James E. Lanier, District Public Defender; and Patrick R. McGill, Assistant District Public Defender, Dyersburg, Tennessee, for the Appellant, Michael DeWayne Mann.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background & Procedural History**

On April 10, 2006, a Dyer County grand jury returned an indictment against the Appellant for one count of aggravated burglary and one count of simple assault.  The indictment alleged that the offenses occurred on March 5, 2006.

A jury trial was held on June 28, 2006, at which the victim, Lisa Flowers, was called as a witness for the State. Flowers testified that on March 5, 2006, she was renting an apartment at the McIver Apartments in Dyer County. She had entered into a rental agreement for this low income housing with the Department of Housing and Urban Development in April of 2005. The terms of the rental agreement provided that Flowers and her two children would reside in the apartment. Flowers testified that it was her understanding that, before another person could live in the apartment, she was "supposed to . . . turn [the person's] name in and their information and get them approved to stay out there . . . ." Flowers testified that on the date of the offense, the Appellant, her boyfriend, was also living in the apartment, but that she had not followed the procedure to add him to the lease. When questioned as to the status of their relationship on the date of the offense, Flowers testified that she and the Appellant were "still together" but had "had an argument."

Flowers recalled that in the early morning of March 5, 2006, she was in the apartment with Rodriquez "Santez" Fisk, with whom she had sexual relations that morning. She stated that around 3:00 a.m., she recognized the voice of the Appellant, who was knocking at the apartment door. Flowers told the Appellant that she noticed he was upset and that "he really didn't want to come in there." She told the Appellant to "come back when he was calmed down." Flowers testified that the door was locked from the inside and that the Appellant did not have a key to the apartment. The Appellant continued to knock on the door, and he subsequently obtained entry into the apartment by breaking the bedroom window. Flowers testified that she and the Appellant began to argue, that he came toward her, she hit him, he grabbed her by the arm, and they continued to argue. Flowers stated that she and the Appellant went outside the apartment and continued to argue.

On direct examination, Flowers reluctantly acknowledged making a statement to police that the Appellant had climbed through the window, caught up to her in the hallway, and "grabbed [her] by the neck and the hair and slammed [her] head against the wall several times." She further confirmed telling police that while the Appellant was on top of her, he grabbed her around the throat and squeezed, grabbed her hair and slammed her head into the floor, and "began to squeeze [her] throat strangling [her] to the point that [she] thought [she] was going to die" until another person was able to remove the Appellant from her. On cross-examination, when asked about her prior statement to the police, Flowers stated that she had been upset with the Appellant because she "thought he was out with somebody else that night" and that she had "exaggerated." Flowers also testified that, at the time of the offense, the Appellant had been living with her for two or three months. Flowers testified that she paid rent for the apartment "most of the time" but that the Appellant had paid rent "on occasion." Flowers stated that the Appellant kept clothes, personal items and toiletries, and a video game system at the apartment.

Rodriquez "Santez" Fisk testified that he knew the victim and that he was a friend of the Appellant.[1] Fisk testified that on the morning of March 5, 2006, he and the victim were "[g]etting ready to" have sex in her apartment, having met at a club earlier in the evening. When Fisk heard

---

[1] Fisk testified that he considered the Appellant to be his "cousin," although they were not "actually [related by] blood."

knocking on the apartment door and the Appellant's voice, he told Flowers to let the Appellant in the apartment, but Flowers refused. Fisk testified that Flowers would not allow him to open the door to let the Appellant in the apartment. Fisk stated that, as he was leaving out the front door, he heard Flowers say that the Appellant broke the bedroom window. Although Fisk initially stated that he was "drunk and . . . high" when he called 911, and could not recall what he told the operator, after a tape of the 911 call was played at trial, he ultimately confirmed that he told the operator, based upon his hearing Flowers screaming, that the Appellant "was trying to come through the window" and his belief that the Appellant was "beating the hell out of [Flowers]." Fisk said that while he was outside the apartment, Flowers came out of the apartment and went across the street. Fisk recalled that the Appellant was following behind Flowers but that he had grabbed the Appellant and "told him how it wasn't worth it."

David Dodds testified that he was a patrol officer for the Dyersburg Police Department and responded to a call reporting a domestic disturbance in progress at the McIver Apartments in the early morning hours of March 5, 2006. When Dodds arrived at the driveway of the apartments, he saw one male, who was not the Appellant, clutching a female, and he saw the Appellant running from the victim. The female appeared to be upset, with her face buried in the male's chest as he held her in a defensive position. The Appellant ran into an apartment, and he answered the door when Dodds knocked. Dodds testified that the Appellant appeared intoxicated when he came to the door and that he had obvious lacerations to both hands. Dodds recalled the Appellant saying something like, "he didn't touch her," but he could not recall his exact words. Dodds noticed blood on the Appellant's hands and on the doorway, and he asked the Appellant if he required medical attention, which the Appellant declined. Dodds also noted that the front window of the apartment was "destroyed." Dodds arrested the Appellant, who was later released on bond with the condition that he did not contact Flowers or return to the apartment. During booking, the Appellant indicated that he lived at his father's house, which was between two or three miles away from the McIver Apartments, according to Dodds.

Another police officer who responded to the scene, Jason Alexander, testified that he walked through the apartment and took photographs of Flowers. Alexander testified that there was blood on the walls of the apartment and that the bedroom was in total disarray. Alexander further recalled that Flowers had a cut on the top of her ear. Alexander stated that he had very little contact with the Appellant at this time, but he opined that if the Appellant had broken the apartment window and cut himself, this injury could have accounted for the amount of blood found in the apartment. On cross-examination, Alexander stated that he described the offense at issue as a domestic assault in the affidavit of complaint filed in the case.

At the conclusion of the State's proof, the trial court granted the Appellant's motion for judgment of acquittal as to the assault charge. The Appellant chose not to testify, and the defense offered no proof at trial. Based upon the aforementioned evidence, the jury convicted the Appellant of aggravated criminal trespass, a Class A misdemeanor, as a lesser-included offense of aggravated burglary.

A sentencing hearing was held on August 1, 2006, at which time the Appellant received a sentence of eleven months and twenty-nine days, with the sentence being suspended after service of ten days in jail. On August 7, 2006, the trial court entered the judgment of conviction. The Appellant filed a motion for new trial on December 4, 2006, which was denied by order of the trial court on December 7, 2006. The Appellant filed a notice of appeal on January 2, 2007.

**Analysis**

Initially, we must address the procedural history of the case. The Appellant was sentenced on August 1, 2006, and his judgment of conviction was entered on August 7, 2006. The Appellant filed his motion for new trial on December 4, 2006. A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. Tenn. R. Crim. P. 45(b); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). Unlike the untimely filing of a notice of appeal, this court does not have the authority to waive the untimely filing of a motion for new trial. Tenn. R. App. P. 4(a); *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). A motion for new trial which is untimely filed is a nullity. *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989).

As noted in the State's brief, the record clearly reflects that the motion for new trial in this case was untimely. A trial court does not have jurisdiction to hear and determine the merits of a motion for new trial that has not been timely filed. *Id.* A trial court's erroneous consideration of ruling on a motion for new trial not timely filed, as in this case, does not validate the motion. *Id.* Nonetheless, on appeal, the Appellant raises the sole issue of sufficiency of the evidence, which need not be raised in a motion for new trial in order to secure appellate review. *State v. Boxley*, 76 S.W.3d 381, 390 (Tenn. Crim. App. 2001) (citing *Patterson*, 966 S.W.2d at 440)).

The Appellant filed a notice of appeal on January 2, 2007. In an appeal as of right to this court, the notice of appeal required by Rule 3 of the Tennessee Rules of Appellate Procedure

> shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.

Tenn. R. App. P. 4(a). Because the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal, a late filed motion for new trial will generally result in an untimely notice of appeal. *Patterson*, 966 S.W.2d at 440; *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987).

In the interest of justice, *see* Tenn. R. App. P. 4(a), we elect to waive the requirement of the timely notice of appeal and address the sufficiency of the evidence. Accordingly, we address the

issue raised by the State regarding the trial court's granting of the Appellant's motion for acquittal as to the assault charge against the Appellant.

## I. Sufficiency of the Evidence

The Appellant challenges the legal sufficiency of the evidence supporting his conviction for aggravated criminal trespass. Due process requires that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof, which is defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In our review of the issue of sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (emphasis in original); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as triers of fact. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1994).

Aggravated criminal trespass is defined by statute as follows:

(a) A person commits aggravated criminal trespass who enters or remains on property when:
　　(1) The person knows the person does not have the property owner's effective consent to do so; and
　　(2) The person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another.

T.C.A. § 39-14-406(a) (2006). Our supreme court has held that aggravated criminal trespass is a lesser-included offense of aggravated burglary. *State v. Terry*, 118 S.W.3d 355, 359 (Tenn. 2003).

After review, we conclude that the evidence presented at trial was legally sufficient to support the Appellant's conviction for aggravated criminal trespass. The Appellant contends that because, at the time of the offense, he was living with his girlfriend, Lisa Flowers, "the habitation to which [he] entered was his own." The Appellant asserts: "It is immaterial that he was also living with his parents at that time. People can have multiple homes." The proof established that Flowers and her two children were identified on the lease agreement as the only occupants of the apartment, and, furthermore, Officer Dodds testified that the Appellant identified his father's house as his own place of habitation. For the purposes of this offense, "owner" means "a person in lawful possession of

property, whether the possession is actual or constructive." T.C.A. § 39-14-401(3) (2006). Because the Appellant was not a party to the lease agreement, clearly, he was not in lawful possession of the property. *See State v. Longford*, 994 S.W.2d 126, 128 (Tenn. 1999). Nonetheless, the proof established that the Appellant had received permission from Flowers to enter and remain upon the property, which had occurred for the previous two or three months. However, the proof established that the Appellant's permission to enter the premises was unequivocally revoked by Flowers in the early morning hours of March 5, 2006, when the Appellant was expressly denied entry by Flowers. The criminal trespass statute provides that "[k]nowledge that the person did not have the owner's effective consent may be inferred where notice against entering or remaining is given by . . . [p]ersonal communication to the person by the owner . . . ." T.C.A. § 39-14-405(a)(1) (2006). Under these circumstances, a rational juror could have concluded that the Appellant's entry into the apartment by the use of force was without privilege and that the Appellant entered knowing that the intrusion was unwarranted. Accordingly, we conclude that the evidence was legally sufficient to support the conviction.

## II. Motion for Judgment of Acquittal

The State argues that the trial court erred in granting the Appellant's motion for judgment of acquittal as to the simple assault charge. The State contends that it offered sufficient proof to convince a reasonable jury that the Appellant inflicted bodily injury upon Flowers in violation of Tennessee Code Annotated section 39-13-101, even if her prior statement to police, which she admitted making but substantively refuted at trial, is not considered.

Our rules of criminal procedure provide that an appeal as of right "lies from any order or judgment in a criminal proceeding where the law provides for such appeal." Tenn. R. Crim. P. 37(a)(b). Rule 3(c) of the Tennessee Rules of Appellate Procedure states:

> In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside *a verdict of guilty* and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The state may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding.

(emphasis added); *see also State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002) (affirming that State's appeal of right limited to circumstances enumerated in Tenn. R. App. P. 3(c)).

As noted above, Rule 3(c) permits a state appeal from a judgment of acquittal only after "a verdict of guilty" is entered. The rule contains no provisions authorizing a state appeal of a judgment of acquittal where there is no guilty verdict, as is the case before us. *See State v. Hulse*, 785 S.W.3d 373, 374-76 (Tenn. Crim. App. 1989). Appellate review under this circumstance would constitute

double jeopardy. *Id.*; *see also Kepner v. U.S.*, 195 U.S. 100, 24 S. Ct. 797 (1904).[2]  Because we are without jurisdiction to entertain the State's appeal, the appeal is dismissed.

**CONCLUSION**

Based upon the foregoing, the judgment of the Dyer County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE

---

[2]Double jeopardy is not implicated in a state appeal of a judgment of acquittal following a guilty verdict because reversal on appeal would require only reinstatement of the jury's original verdict, rather than a new trial.