IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 29, 2023 Session

## STATE OF TENNESSEE v. ROBERT LEROY LITTLETON, III

**Appeal from the Criminal Court for Johnson County**
**No. 2018-CR-80     Lisa N. Rice, Judge**

_____

**No. E2022-00858-CCA-R3-CD**

_____

The defendant, Robert Leroy Littleton, III, appeals his Johnson County Criminal Court convictions of first-degree murder, especially aggravated kidnapping, conspiracy to commit especially aggravated kidnapping, extortion, and conspiracy to commit extortion, arguing that the trial court erred by denying his motion to suppress his pretrial statements. Because the defendant's motion for new trial was untimely filed, we dismiss the appeal.

**Tenn. R. App. P. 3; Appeal Dismissed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JILL BARTEE AYERS, J., joined.

Helen Nicole Himebaugh (at trial and on appeal) and James T. Bowman (at trial), Johnson City, Tennessee, for the appellant, Robert Leroy Littleton, III.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Steven R. Finney, District Attorney General; and Dennis Brooks and Robin Ray, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant, along with his wife, Leigh Katherine Littleton, Valerie Ann Dollar, Michael Stacy May, Brittany Arnold, and James Combs, was charged with first-degree murder, especially aggravated kidnapping, conspiracy to commit especially aggravated kidnapping, extortion, and conspiracy to commit extortion in relation to the 2018 disappearance of the victim, Carlton "Lovey" Edmondson.

At the November 30, 2020 suppression hearing, the defendant argued that his three pretrial statements to the police should be suppressed because they were involuntarily made. The defendant did not dispute that he was informed of and knowingly waived his *Miranda* rights prior to his January 20, 2018 interview with Detectives Scott Carico and Isaac Propst of the Burke County, North Carolina, Sheriff's Office. Rather, the defendant contended that at several points throughout the interview, he "clearly and unequivocally" invoked his right to counsel by requesting to make a phone call. The defendant also argued that his pretrial statements were involuntarily made. Detective Propst testified as to his January 20, 2018 interview with the defendant, and Chief Investigator Shawn Brown of the Johnson County Sheriff's Department testified as to his January 20 and January 22, 2018 interviews with the defendant. After arguments by the State and the defendant, the trial court denied the defendant's motion to suppress.

The evidence adduced at the defendant's July 2022 trial established that on the morning of January 18, 2018, the victim's aunt, mother, and father received telephone calls from an unknown number informing them that the caller had possession of the victim and demanding repayment of $700 the victim had "stolen" from the caller. The victim's aunt, Irea Suionne Lipford Uebele, described the unknown caller's voice as male and noted several other voices in the background, including that of the victim. During these calls, the unknown caller threatened to kill the victim if Ms. Uebele "tr[ied] anything," and Ms. Uebele recalled that she could hear the victim being hit while he begged for his life.

On January 19, 2018, the defendant was arrested by the Johnson County Sheriff's Office in Trade, Tennessee. Detectives Propst and Carico traveled from Burke County, North Carolina, to interview the defendant. The defendant was provided with *Miranda* warnings, waived his rights by signing a general waiver form, and was subsequently interviewed by Detectives Propst and Carico for three hours and 33 minutes. During this interview, the defendant admitted that he had attempted to purchase methamphetamine from the victim in Drexel, North Carolina, and that the victim "shorted" him on the sale. The defendant confessed that he told the victim to get in the defendant's vehicle, that the victim was blindfolded, and that he transported the victim to a camper residence in Vilas, North Carolina. The defendant stated that several other individuals joined him at the residence and that he forced the victim to tell "each and every person" present that "he tried to rob us and rip us off." The defendant admitted that he later transported the victim to a remote location, where James Combs placed the calls to the victim's family. The defendant confessed to using brass knuckles to strike the victim and said that Ms. Arnold also beat the victim. The defendant further admitted that he left the victim outside after he had been beaten and that he did not return for him.

Chief Investigator Brown reviewed two videos recovered from Ms. Combs's cell phone, which were played for the jury. The first video depicted the victim lying in the snow and speaking with several individuals off-screen, and on a cell phone. Investigator Brown identified the defendant's voice in this video. The second video showed the

victim's face, which had been bloodied, and depicted him crouching in the snow briefly before being kicked to fall on his side. Investigator Brown concluded from his review of these videos that they had been recorded near Canter Road in Trade, Tennessee. Members of the Johnson County Sheriff's Office searched this area and collected a buccal swab of a reddish-brown substance found in the snow. This substance was tested by the Tennessee Bureau of Investigation against buccal swabs from the victim's parents. Agent Jillian Welker of the Tennessee Bureau of Investigation testified that the DNA collected from the reddish-brown substance was consistent with a genetic profile of the offspring of the victim's parents.

The jury convicted the defendant as charged on July 23, 2021. On October 4, 2021, the trial court sentenced the defendant to an effective sentence of life imprisonment plus 20 years, and the judgments were entered on that date. The defendant subsequently filed an untimely motion for new trial on November 5, 2021. Neither the State nor the trial court acknowledged the untimeliness of the defendant's motion for new trial. Notwithstanding its untimeliness, the trial court heard and denied the defendant's motion for new trial on May 31, 2022. The defendant filed a notice of appeal on June 15, 2022.

A motion for new trial must be made in writing "within thirty days of the date the order of sentence is entered" to preserve issues for review by this court. Tenn. R. Crim. P. 33(b). This 30-day time limit is mandatory, unforgiving, and may not be extended by the trial court. Tenn. R. Crim. P. 45(b)(3); *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). The trial court is without jurisdiction to consider and rule upon the merits of an untimely motion for new trial. Tenn. R. App. P. 3(e). A trial court's consideration of and ruling upon an untimely motion for new trial will not validate the motion. *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). "[T]he failure to timely file a motion for new trial results in the waiver of those issues which may result in the granting of a new trial." *Id.*; *see also State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004) ("If a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of evidence and sentencing").

The judgments against the defendant were entered on October 4, 2021, following his sentencing hearing. Therefore, the defendant had until November 3, 2021 to timely file a motion for new trial. The defendant filed his motion for new trial on November 5, 2021, rendering his motion untimely. This untimeliness is not cured by the fact that the trial court heard and ruled upon the motion. The sole issue raised in this appeal is the trial court's denial of the defendant's motion to suppress, but because this issue was not properly preserved in a timely motion for new trial, it is waived. Additionally, the June 15, 2022 notice of appeal is, therefore, untimely. *See* Tenn. R. App. P. 4(a) ("[T]he notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from").

Accordingly, the appeal is dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE