# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 4, 2008

## STATE OF TENNESSEE v. ARTHUR LEE TAYLOR

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-639     Donald H. Allen, Judge**

**No. W2006-01104-CCA-R3-CD  - Filed September 3, 2008**

A Madison County Circuit Court jury convicted the appellant, Arthur Lee Taylor, of possessing 0.5 grams or more of cocaine with intent to sell, possessing 0.5 grams or more of cocaine with intent to deliver, and two counts of misdemeanor possessing dihydrocodeinone.  The trial court merged the cocaine convictions and merged the dihydrocodeinone convictions and sentenced the appellant to an effective sentence of thirty years in confinement.  The trial court also imposed the fines recommended by the jury of $50,000 for the cocaine conviction and $750 for the dihydrocodeinone conviction.  On appeal, the appellant contends that the evidence is insufficient to support the convictions, that the trial court's instructions and the jury's verdicts constructively amended the indictments, that the trial court erred by failing to require the State to elect the specific offenses it was relying on for conviction, and that his $50,000 fine is excessive.  We conclude that because the appellant's motion for new trial was untimely filed, his second and third issues are waived.  Regarding his sufficiency and sentencing issues, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Robert Brooks (on appeal), Memphis, Tennessee, and Ramsdale O'DeNeal (at trial), Jackson, Tennessee, for the appellant, Arthur Lee Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown and Rolf Hazlehurst, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Investigator Charlie Yarbrough from the Madison County Sheriff Department's Metro Narcotics Division testified that prior to working for the sheriff's department, he worked for about two years in the City of Humbolt's Gang Unit. In the late 1990's and early 2000's, Investigator Yarbrough worked undercover in Hardeman County and went into controlled environments to purchase drugs. He stated that he had attended several drug counteraction schools in Meridian, Mississippi; "DEA school"; and drug and narcotics investigation schools in Crockett County.

Investigator Yarbrough testified that about 1:15 a.m. on March 11, 2004, he parked his unmarked truck at the Bull Market on Hollywood Drive in Jackson. He said that the convenience store was in a known drug trafficking area and that he had received several complaints about people selling drugs at the store late at night. Investigator Yarbrough was sitting in his truck and was about five to six feet away from the gas pumps when he saw the appellant's car pull up to one of the pumps. The appellant got out and put the gas pump nozzle into the tank of his car but never pumped any gas. A second car pulled up to the pumps, and a white male got out of the car. The white male and the appellant spoke for a few seconds, and the appellant pulled out a plastic bag containing a white substance. Investigator Yarbrough saw the appellant take a piece of the white substance out of the bag and give it to the white male. The male then handed the appellant some money. Investigator Yarbrough was unable to block the white male's car, and the male drove away from the store. Investigator Yarbrough pulled up behind the appellant's car, turned on his blue lights, approached the appellant, and told the appellant what he had seen. He saw the plastic bag sticking out of the appellant's left pants pocket, and the bag still contained the white rock. The appellant kept trying to put his left hand in his pocket despite Investigator Yarbrough's telling him to stop. Investigator Yarbrough told the appellant to put his hands on the car, and the appellant said, "Okay, you got me." Investigator Yarbrough took the plastic bag from the appellant and waited for backup.

Investigator Yarbrough testified that Deputy Lynette Bradley arrived, patted down the appellant, and found a hydrocodone pill. Investigator Yarbrough did not find any items, such as a crack pipe, on the appellant's person to indicate that the appellant had possessed the drugs for personal use. However, he found $136 and a cellular telephone on the appellant's person. He said the crack cocaine in the plastic bag weighed 4.5 grams and had a street value of $450. He said that cocaine users usually bought 0.1 to 0.2 grams of the drug for $10 to $20 and that a person's possessing more than 0.5 grams usually meant the drug was for resale.

On cross-examination, Investigator Yarbrough testified that in the two months before the appellant's arrest, he had made two or three other arrests at the store. He stated that the gas pump was not blocking his view of the appellant and that the appellant was at the pump for about forty-five seconds before the second vehicle pulled up. He did not remember what kind of car the white male was driving and did not get the car's license tag number. He stated that the area was well-lighted and that he could see the transaction by looking through his truck's windshield. He acknowledged that the cocaine recovered from the plastic bag could have been an "eight ball" and that a person could buy an "eight ball."

Deputy Julie Lynette Bradley from the Madison County Sheriff's Department testified that on March 11, 2004, she went to the Bull Market convenience store to pick up the appellant and transport him to the sheriff's department. When she arrived, she patted down the appellant for her safety and felt a small object in his left pants pocket. When she pulled out the object, she saw that it was a pill. On cross-examination, Deputy Bradley testified that she did not remember if the pill was in a bag, was wrapped in something, or was by itself. She gave the pill to Investigator Yarbrough.

Jessica Webb of the Tennessee Bureau of Investigation (TBI) testified that she analyzed the evidence recovered in this case. The plastic bag contained cocaine, and the pill was dihydrocodeinone.

The appellant testified that he was fifty-five years old at the time of trial. He stated that on March 11, 2004, he pulled up to the gas pumps at the Bull Market convenience store and "bought the, you know, crack cocaine from the dude when he pulled up." He stated that he bought "[a] ball," which weighed about 3.5 grams, and that he paid $150 for it. He said the white male also sold him the dihydrocodeinone pill and told him that he "ought to try that."

On cross-examination, the appellant testified that he had purchased drugs from the white male previously and that he knew the man as "Mark." He stated that he walked up to Mark's car, that Mark never got out of the car, and that Investigator Yarbrough was lying. He stated that he and his "partner" were going to smoke the crack cocaine and that he had left his crack pipe at home. Although the appellant had been charged with possession of cocaine with intent to sell, possession of cocaine with intent to deliver, possession of dihydrocodeinone with intent to sell, and possession of dihydrocodeinone with intent to deliver, the jury found the appellant guilty of the cocaine offenses as charged and two counts of the lesser included offense of simple possession of dihydrocodeinone. The trial court merged the cocaine convictions, Class B felonies, and merged the dihydrocodeinone convictions, Class A misdemeanors.

After a sentencing hearing, the trial court sentenced the appellant as a Range III, career offender to concurrent terms of thirty years and eleven months, twenty-nine days. It also imposed the fines recommended by the jury of $50,000 for the cocaine conviction and $750 for the dihydrocodeinone conviction. The appellant filed a motion for new trial. The trial court heard the motion on its merits and denied it. The appellant filed this appeal.

## II. Analysis

The appellant contends that the evidence is insufficient to support the convictions, that the trial court's instructions and the jury's verdicts constructively amended the indictments, that the trial court erred by failing to require the State to elect the specific offenses it was relying on for conviction, and that his $50,000 fine for the cocaine conviction is excessive. The State argues that the appellant's motion for new trial was untimely and, therefore, results in a waiver of all issues except those relating to the sufficiency of the evidence and sentencing. We agree with the State.

A motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). Because a trial court does not have jurisdiction to hear and determine the merits of an untimely motion for new trial, the trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . does not validate the motion." Martin, 940 S.W.2d at 569 (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)). An untimely motion for new trial "not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial." Id. Moreover, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal. Therefore, an untimely motion for new trial often will also result in an untimely notice of appeal. State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987).

The sentencing hearing in this case was held on February 28, 2005, and the judgments of conviction were entered on March 21, 2005. The appellate record contains a motion for new trial in which the appellant claimed the evidence is insufficient to support the convictions. The record also contains a "MOTION TO CORRECT CLERICAL MISTAKE." The appellant filed both motions on January 17, 2006. The MOTION TO CORRECT CLERICAL MISTAKE alleges the following: Defense counsel tried to file the appellant's motion for new trial at the clerk's office on March 4, 2005, "but was told to come back the next day because the computer was down." Counsel left copies of the new trial motion at the clerk's office and took the original motion back to his office. The next day, counsel's secretary took the original motion back to the clerk's office and filed it. When counsel asked that a hearing on the motion be set and requested a transport order, he discovered that the motion for new trial was not in the trial court's file "due to the clerical mistake." In the MOTION TO CORRECT CLERICAL MISTAKE, counsel requested that the trial court allow the motion for new trial to be filed properly. The appellate record also contains an affidavit from defense counsel's secretary, swearing that she filed the appellant's original new trial motion on March 5, 2005. However, nothing in the appellate record indicates that the trial court ever ruled on the appellant's motion to correct the clerical mistake, and the trial court did not address the timeliness of the appellant's motion for new trial at the May 15, 2006 motion for new trial hearing. At the conclusion of that hearing, the trial court denied the motion for new trial. The trial court also filed a written order on May 24, 2006, denying the motion. The appellant filed a notice of appeal on May 26, 2006.

The appellant does not address the State's contention that his motion for new trial and notice of appeal were untimely filed. The motion for new trial before us clearly was filed well beyond the thirty-day time limit mandated by Tennessee Rule of Criminal Procedure 33(b). As a result, the appellant's notice of appeal also was untimely. "[I]n all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. Crim. P. 4(a) In the interests of justice, we have decided to waive the timely filing of the notice of appeal in this case. However, because the appellant's motion for new trial was untimely, we will only address his issues regarding sufficiency of the evidence and sentencing. The

-4-

remaining issues are waived, and we discern no plain error.[1]  See Tenn. R. Crim. P. 52(b).

## A.  Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support his convictions for possession of cocaine with intent to sell and possession of cocaine with intent to deliver because of Investigator Yarbrough's "questionable ability" to see the appellant's transaction with the white male and because "there was no more reason to believe the officer's version of what happened than to believe the defendant's."  The State argues that the evidence is sufficient.  We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).  The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury.  Id.  Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  It is an offense for a person knowingly to possess a controlled substance with intent to sell or deliver the substance.  Tenn. Code Ann. § 39-17-417(a)(4).

In this case, Investigator Yarbrough testified that he parked his truck at a convenience store in a known drug area and that he saw the appellant arrive at the store.  Shortly thereafter, a white male arrived and spoke with the appellant.  Investigator Yarbrough witnessed the appellant pull a plastic bag out of his pants pocket and take part of a white substance from the bag and give it to the male.  He then saw the male give the appellant some money.  Officer Yarbrough stopped the appellant and confiscated the plastic bag.  TBI testing revealed that the bag contained crack cocaine.  Investigator Yarbrough testified that the cocaine in the bag weighed 4.5 grams, that it was worth about $450, and that a person's possessing such a large amount of the drug usually meant the drug was for resale.  From these facts and circumstances, a jury could properly infer that the appellant intended to sell and deliver crack cocaine.  See State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (stating that it was proper for the jury to consider "the amount and value of a

---

[1]We note that the only issue the appellant raised in his January 17, 2006 motion for new trial was that the evidence is insufficient to support the convictions.  Likewise, sufficiency of the evidence was the only issue raised by the appellant and addressed by the trial court at the May 15, 2006 motion for new trial hearing.  Therefore, even if the appellant timely filed his new trial motion, as he claimed in his MOTION TO CORRECT CLERICAL MISTAKE, his remaining issues would still be waived.  See Tenn. R. App. P. 3(e).

controlled substance . . . to infer an intention to distribute"); State v. William Aubrey Trotter, No. 01C01-9701-CR-00019, 1998 Tenn. Crim. App. LEXIS 219, at *9 (Nashville, Feb. 24, 1998) (stating that officer's testimony about the amount of cocaine possessed by the defendant, the defendant's being in an area known for drug dealing, and the lack of drug paraphernalia supported the jury's conclusion that the defendant possessed the cocaine for the purpose of selling it). As for the appellant's claim that there was no more reason for the jury to believe Investigator Yarbrough's testimony over that of the appellant, accrediting the State's witnesses was the jury's prerogative. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). The evidence is sufficient to support the appellant's convictions.

### B. Excessive Fine

The appellant contends that his $50,000 fine is excessive. He argues that, "given his advanced age, long-standing disability, and very lengthy sentence, there was justification for the trial court to . . . suspend the fine." He also argues that his ability to pay the fine is "transparently non-existent."

At the sentencing hearing, Terrace Williams, the appellant's sister, testified that the appellant was a drug user but did not sell drugs. She said the appellant had been a drug addict for about twenty years and needed rehabilitation because "he's not able to help himself." She said the appellant also had been receiving disability payments for the past twenty years because he had a "nervous condition" and "a liver problem." She stated that the appellant had four children and that the youngest child was thirteen years old at the time of the hearing.

The State introduced the appellant's presentence report into evidence. According to the report, the then fifty-five-year-old appellant dropped out of school after the eighth grade in order to take care of his siblings. In 1982, he began receiving disability payments after being hurt while working as a machine operator for Bemis Mill. The appellant stated in the report that he had been diagnosed with colon cancer and high blood pressure and was under a doctor's care. He also reported that he used crack cocaine daily and that he had received counseling at Pathways Counseling Center for depression and "nerves." The report shows that the appellant has thirteen prior felony convictions for selling cocaine and a felony conviction for selling marijuana. The appellant received his first drug conviction in 1985 when he was thirty-five years old. He also has multiple other convictions, including a felony conviction for perjury, several convictions for traffic offenses, and a conviction for casual exchange. According to the report, the appellant has violated his parole at least once.

The trial court noted that the appellant had fifteen prior felony convictions, thirteen of which were for selling cocaine. The trial court applied enhancement factor (1), that the appellant "has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (2006). In mitigation, the trial court considered the appellant's age and disability. See Tenn. Code Ann. § 40-35-113(13). The trial court sentenced the appellant as a Range III, career offender to concurrent sentences of thirty years

for the felony conviction and eleven months, twenty-nine days to be served at seventy-five percent for the misdemeanor conviction. Finally, the trial court imposed the $50,000 fine recommended by the jury for the felony conviction and the $750 fine recommended by the jury for the misdemeanor conviction.

A fine imposed on a defendant following conviction is a part of the defendant's sentence. State v. Bryant, 805 S.W.2d 762, 765, (Tenn. 1991); see Tenn. Code Ann. § 40-35-104(c)(1). "The trial court's imposition of a fine, within the limits set by the jury, is to be based upon the factors provided by the 1989 Sentencing Act, which include 'the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence.'" State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (quoting State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991)). We note that the maximum fine the trial court could have imposed for the cocaine conviction was $100,000. See Tenn. Code Ann. § 39-17-417(c)(1). Nevertheless, a fine may be excessive even though it does not exceed the statutory maximum. State v. Taylor, 70 S.W.3d 717, 721 (Tenn. 2002). Indigency alone does not immunize a defendant from a fine, and a defendant must establish on appeal why his fine is excessive. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

In this case, the record does not establish that the appellant's fine is excessive. The appellant has thirteen prior felony convictions for selling cocaine, the same offense he was convicted of in the instant case. Furthermore, the appellant maintained at trial and in the statement he provided for his presentence report that he only bought cocaine and did not sell it. Based upon the principles of the Sentencing Reform Act, and the appellant's lack of potential for rehabilitation, we conclude that the $50,000 fine recommended by the jury and accepted by the trial court is not excessive.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE