IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 20, 2019

**STATE OF TENNESSEE v. DEMETRIUS BAILEY**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-B-1336     Mark J. Fishburn, Judge**

————————————————————

**No. M2018-00018-CCA-R3-CD**

————————————————————

A Davidson County grand jury indicted the defendant, Demetrius Bailey, with one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, two counts of aggravated robbery, and one count of aggravated assault. Following trial, a jury found the defendant guilty of all counts, and the trial court imposed an effective sentence of eighteen years. On appeal, the defendant challenges the trial court's evidentiary rulings allowing the admission of a Kal-Tec .380 pistol. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Ben Powers, Nashville, Tennessee, for the appellant, Demetrius Bailey.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Glenn Funk, District Attorney General; and Vince Wyatt, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

At approximately 2:00 a.m. on October 1, 2014, Officer Steven Smith pulled over a silver 2007 Kia Sorento due to a broken taillight on the driver's side. The occupants of the vehicle were searched, and three of the occupants, Ebony Hayes, Donald Edmonds, and Roxanna Marhami, were taken into custody. The defendant, however, was not taken

into custody during the traffic stop and was left in possession of the vehicle. While Officer Smith was completing his arrest paperwork, he allowed the defendant and Ms. Hayes to communicate through the window of the squad car. During this conversation, the defendant and Ms. Hayes referred to each other as boyfriend and girlfriend, and Ms. Hayes told the defendant to "get [her] out."

That afternoon, the defendant picked up Arianna Arrendo-Brown[1] and Jillian Harris in the silver SUV. The defendant wanted to get Ms. Hayes out of jail but needed cash. Ms. Hayes called the defendant from jail and told him to "pick some money up from her boss man," Mr. Nidal "Ali" Naser. Mr. Naser rented kitchen space inside Jerry's Market, a convenience store, and Ms. Hayes had recently worked with him prior to being fired. The defendant knew Mr. Naser was paid in cash each night and formulated a plan to rob him at his house. Ms. Arrendo-Brown and Ms. Harris's role was to "keep Ali talking." They picked up a friend of the defendant to assist with the robbery and drove to Jerry's Market. There, the defendant spoke with an employee who was sweeping the parking lot and asked "where Ali was."

After leaving Jerry's Market, they drove to Mr. Naser's house and parked "a small distance away." Mr. Naser, who lived in a boarding house with several other people, was sitting on his back porch with one of his roommates, Ali "Marco" Nowalish. Ms. Arrendo-Brown and Ms. Harris walked to the back of the house and asked Mr. Naser and Mr. Nowalish "where Ali was." The women said Ali had given them his phone number. When Mr. Naser denied knowing the two women, they told him they were "friends with Ebony." Suddenly, the defendant and the other man came around the corner with handkerchiefs covering the lower half of their faces. The defendant was holding a gun and demanded money, forcing Mr. Naser and Mr. Nowalish inside the house.

Once inside, the defendant began kicking down doors in an attempt to find money. Anastacio Primevo was sleeping in his room when he heard noises on the other side of the door. The defendant kicked the bedroom door in and began demanding money. After telling the defendant that he did not have any money, Mr. Primevo ran out of the house. Catrino Luis Lopez was in the bathroom at the time and heard someone screaming inside the house. Someone began hitting the door, telling Mr. Lopez to get out of the bathroom. However, when Mr. Lopez finally opened the door, the person had left.

Jose Luis Lazo, the owner of the house, was sitting in his room when he heard someone screaming in the kitchen. He opened the bedroom door and saw the defendant holding a gun to Mr. Naser's head. The defendant asked Mr. Naser where the owner of

---

[1] Ms. Arrendo-Brown is also referred to as Ariana Angel Arreandondo Brown and Arianna Arredondo-Brown throughout the record.

the house was and began walking toward Mr. Lazo's room. Mr. Lazo closed the door, and the defendant "started knocking on the door very hard." When Mr. Lazo realized the defendant was going to knock the door down, he ran out of the house through the front door, which was located inside Mr. Lazo's bedroom. There were several men standing across the street, and Mr. Lazo asked them to call 911. As Mr. Lazo stood across the street, he saw the defendant enter his bedroom and look outside.

The defendant, Ms. Arrendo-Brown, Ms. Harris, and the other man fled the house through the back door and drove away in the silver SUV. After leaving the house, they discovered they had only stolen ten dollars, four cigarettes, and a cell phone. The defendant told Ms. Harris to wipe the cell phone off with her shirt and throw it out the window.

Detective Matthew Filter with the Metro Nashville Police Department responded to the scene and interviewed Mr. Naser. During the interview, Mr. Naser described the suspects as two overweight black females and two black males "in their early twenties and one was described as being taller than the other." The taller suspect was holding a "small," "dark" gun. Due to the cash-only nature of his business, Mr. Naser believed he was targeted by someone who knew him. As he was investigating the area where the suspects' car was parked, Detective Filter observed a beer bottle on the side of the road and requested the bottle be checked for fingerprints. Testing by the Metro Nashville Police Department Crime Lab later confirmed the fingerprints on the bottle belonged Ms. Arrendo-Brown.

The next day, when Mr. Naser arrived at work, an employee approached him and told him "Ebony's boyfriend" was at the market last night with "a guy [] and two girls," looking for him. When Mr. Naser heard this information, "things start[ed] clicking," and he realized the man who had held the gun during the robbery was the boyfriend of Ms. Hayes. Although he did not know the defendant by name, when Ms. Hayes worked with Mr. Naser, the defendant would often sit in a booth at the store, waiting for Ms. Hayes's shift to end. After this realization, Mr. Naser contacted Detective William Bolen and later confirmed the defendant's identity through a photo line-up.

Detective Bolan obtained surveillance footage from Jerry's Market from the night of the robbery. This footage showed a silver SUV enter the parking lot, stay for approximately five minutes, and leave in the direction of Mr. Naser's house. However, because the incident occurred at night, there was little ambient lighting near the convenience store, and the video quality was poor, Detective Bolan was unable to determine if anyone exited or approached the vehicle.

- 3 -

Approximately three weeks after the robbery, Officer Steven Weir with the Metro Nashville Police Department spotted the defendant drinking a beer on a bench in a public housing development. Because the development had a no trespassing policy, Officer Weir asked the defendant if he lived on the property or was visiting someone. Officer Weir then asked the defendant for consent to search his person, which the defendant granted by standing up and placing his arms in the air. During the search, Officer Weir discovered a Kel-Tech .380 handgun in the defendant's pants. The defendant stated he obtained the gun in September 2014, after he observed someone throw it in some bushes.

Following deliberations, the jury found the defendant guilty on all counts, and the trial court imposed an effective sentence of eighteen years. This appeal followed.

*Analysis*

On appeal, the defendant argues the trial court erred in admitting both the Kel-Tec .380 pistol and testimony regarding the circumstances of its discovery. The State contends the defendant has waived all issues except sufficiency of the evidence by failing to timely file a motion for new trial. Additionally, the State contends the issues raised on appeal are not subject to plain error review because the trial court did not breach a clear and unequivocal rule of law. We agree with the State.

I. **Waiver**

First, we must address the State's contention that the defendant has waived the issues presented on appeal because he failed to timely file his motion for new trial. "A motion for new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The thirty-day time limit for filing a motion for new trial is jurisdictional, and an untimely motion for new trial "is a nullity." *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). "A trial judge does not have jurisdiction to hear and determine the merits of a motion for new trial which has not been timely filed." *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004).

Failure to timely file a motion for new trial waives plenary review of all issues "except for sufficiency of [the] evidence and sentencing." *Id.* In addition, a notice of appeal must be filed "within [thirty] days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). This period is not tolled by the filing of an untimely motion for new trial. *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). Although this Court may waive the untimely filing of a notice of appeal, we do not have the authority to waive the untimely filing of a motion for new trial. *State v. Stephens*, 264 S.W.3d 719, 728 (Tenn. Crim. App. 2007).

Here, the judgment was entered on May 1, 2017, and, therefore, the motion for new trial was due by May 31, 2017. However, a review of the record shows the defendant's motion for new trial was not filed until June 7, 2017. A hearing on the motion for new trial was held on December 7, 2017, and was orally overruled that day. However, as previously discussed, the trial judge did not have jurisdiction to hear the untimely motion for new trial. Accordingly, all issues have been waived except for sufficiency of the evidence. Because the defendant has raised only evidentiary issues on appeal, we will review them solely for plain error.

Additionally, although not argued by the State, the time for filing a notice of appeal was not tolled by the late-filed motion for new trial. Although the notice of appeal was filed within thirty days of the trial court's ruling on the motion for new trial, the notice of appeal was due on May 31, 2017. However, this Court has the discretion to waive the timely filing of a notice of appeal, and we choose to do so in this case. *See* Tenn. R. App. P. 4(a).

## II. Plain Error Review

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our Supreme Court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.*

at 283. Moreover, we note that "rarely will plain error review extend to an evidentiary issue." *State v. Jonathan Mitchell Grimes*, No. W2014-00786-CCA-R3-CD, 2015 WL 3929694, at \*10 (Tenn. Crim. App. June 26, 2015) (quoting *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600450, at \*2 (Tenn. Crim. App. Sept. 11, 2007).

### A.     Kel-Tec .380 Pistol

The defendant argues the trial court erred in allowing the admission of the Kel-Tec .380 pistol during trial. Specifically, he argues the gun is not relevant, and any probative value is outweighed by the danger of unfair prejudice.

Tennessee Rule of Evidence 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence is typically admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. "Generally, the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *Lewis*, 235 S.W.3d at 141). This Court finds an abuse of that discretion when the trial court applies "an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Lewis*, 235 S.W.3d at 141 (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

Here, Mr. Naser described the gun used during the robbery as "small," "dark," and "not silver." The State then introduced a Kel-Tec .380 pistol, which was discovered in the defendant's possession three weeks after the robbery, during the testimony of Officer Weir. Following the admission of the gun, several other witnesses described the gun's appearance. Ms. Arrendo-Brown testified the defendant used an "all black" gun that was "on the small side." However, Ms. Harris believed the gun used during the robbery was silver, and Detective Bolan agreed that his report described the gun as black and silver.

Based on the foregoing, the defendant has failed to show that a clear and unequivocal rule of law was breached. *Smith*, 24 S.W.3d at 282-83. The Kel-Tec .380 was similar in both size and color to the gun described by Mr. Naser, who testified prior to the gun's admission. Therefore, the gun was relevant and highly probative regarding the defendant's identity as the perpetrator of the robbery. In addition, after the gun was admitted, the trial court addressed any unfair prejudice by providing the following limiting instruction:

Members of the jury, the fact that the defendant was found in possession of a weapon on October 22nd, 2014, cannot be considered by you as evidence that he has the propensity to commit the type of crimes for which he is on trial today. You can only consider it as circumstantial evidence as to whether or not he had access to a weapon on October 1st of 2014, not that he necessarily committed any crime, just from the possession of the weapon. It's just circumstantial evidence to weigh, consider with all the other evidence in the case and you'll give it what weight you think is deemed appropriate.

Accordingly, we conclude the trial court did not abuse its discretion in admitting the gun at trial, and the defendant is not entitled to relief under plain error review.

## B.   Testimony of Officer Weir

Similarly, the defendant argues Officer Weir's testimony that the defendant was in possession of a Kel-Tec .380 pistol on October 22, 2014, was irrelevant, and the probative value of his testimony was outweighed by the danger of unfair prejudice. The defendant notes he was found in possession of the gun "roughly three weeks after the home invasion occurred." The State contends the trial court properly admitted the evidence because it was probative as to the identity of the perpetrator, and the mere possession of a handgun does not constitute a bad act.

At trial, outside of the jury's presence, the defendant objected to the introduction of testimony by Officer Weir regarding the defendant's arrest for unlawful possession of a weapon. The defendant argued the jury would "assume" he has a propensity to commit crimes with a weapon based on this evidence. The trial court ruled the evidence was admissible, but prohibited the State from mentioning the defendant was a convicted felon at the time of the arrest. Additionally, the trial court instructed the jury that they were prohibited from concluding the defendant had the propensity to commit a crime with a weapon based on Officer Weir's testimony.

Officer Weir testified he was patrolling the area near a public housing community on October 22, 2014, when he noticed the defendant sitting on a bench, drinking a beer. Because the community had a no trespassing policy, Officer Weir approached the defendant and asked if he lived there or if he was visiting someone. While another officer verified the defendant's assertion that he was visiting a friend, Officer Weir asked for permission to search the defendant, which the defendant granted. During the search, Officer Weir discovered a Kel-Tec .380 pistol in the defendant's waistband. The defendant told Officer Weir that he found the gun in September 2014.

- 7 -

Based on the foregoing, the defendant has failed to show that a clear and unequivocal rule of law was breached. *Smith*, 24 S.W.3d at 282-83. The testimony that the defendant possessed a gun in the weeks following the robbery that could possibly have been the weapon used was not improperly admitted to establish propensity. The evidence was directly relevant because it was especially probative as to the identity of the perpetrator. Additionally, the trial court addressed any unfair prejudice by prohibiting the State from eliciting testimony that the defendant was a convicted felon and by providing a limiting instruction following Officer Weir's testimony. The trial court did not abuse its discretion in admitting the evidence, and the defendant is not entitled to relief on this issue.

## C.     Cumulative Error

Finally, the defendant contends the cumulative effect of the trial court's alleged evidentiary errors requires a new trial. We discern no error by the trial court. Therefore, the defendant's argument is without merit.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE